## WRIGHT *v.* THE STATE.

1. The evidence warranted the verdict.
2. Where the newly discovered evidence relates to the insanity of the accused at the time of the commission of the offence, the opinion of a witness who is not an expert is not evidence, without the facts upon which it is predicated.        *Judgment affirmed.*

November 4, 1892.

Before Judge HUTCHINS. Walton superior court. August term, 1892.

Will Wright was indicted for burglary, and was convicted. His motion for a new trial was overruled, and he excepted. The grounds of the motion are, that the verdict is contrary to law and unsupported by the evidence, and that it is contrary to the charge of the court to the effect, that if the jury believed from the evidence that the defendant accounted for the possession of the ring in a manner excluding the idea that he stole it, they should not convict him. Counsel insists that not a word of evidence was produced to the jury to dispute the defendant's statement that he found the ring in front of Dr. Gibbs', and that Gibbs' boy claimed the ring when found. At the trial Miss Hawkins testified that her mother's house was broken open last year, by breaking a pane of glass in the stove-room window, and then a nail was pushed up and the window raised. She knew the window was fastened. Nobody saw the house entered. $1.55 in money and a gold ring worth two or three dollars were missed after the breaking. The money was hers, and the ring was Ray Hawkins's. The

house was entered in the daytime. The ring was in the house; she did not see it that morning, but had seen it the evening before. The defendant was not far from the house that morning when they left home; he was sitting on the fence by the road. They left home soon in the morning, after they had fastened up the house. When they went back the window was not up, but the nail was broken. Witness had not seen the money that morning. They saw this boy on the fence as they went off. They recovered the ring from her cousin Will Knox. One Malcom testified that he was present when Knox got from the defendant the ring referred to; did not remember just when it was, but it was after the time Mrs. Hawkins' house was said to have been broken open; did not know where he got the ring.

The defendant stated: " That morning that Mr. Knox saw me I was going to Mrs. Lizzie Garrett's after some powder and some flour, and I went across to Mr. Tom Gibbs, and he said that was his ring, and Mr. Knox saw me, and he told me that I had to give up that ring, and I told him that I had found it down by the side of the house, and he said I had to get the money and I told him that I did not know anything about it. Then I went over to Mrs. Garrett's and got the money. He told me that if I did not get it up he would kill me."

In rebuttal Malcom testified: I was present when Knox had this talk with the defendant. Knox told him, if he would own it up it would be lighter on him, and the boy owned it up. He gave Knox the ring and said he got it out of Mrs. Hawkins' house. He did not tell how he got in. Knox did not tell him that he would kill him. I would have heard it if it had occurred. I was in the back end of the store when this passed, and heard everything that occurred. He said that he got the ring out of the house. He knew from what I had told him that the house had been broken open, and I

told him it would be better if he would bring up the things. I asked him if he didn't break in, and he said yes. I then told him it would be better for him to bring up the things. He had stated that he had broken in before I told him it would be better for him to bring the money also. He brought the money back. I don't remember how much there was of it. I don't know whether the boy knew when we took him back there what we wanted with him, or not. The first thing that was said, we asked him if he didn't break in that house, and he said that he did. We then told him to bring up the things he had stolen. He said that he had taken the ring and the money. I did not first tell him that a ring and some money had been stolen. I told him to bring back the things. We did take him back by himself, but we did not tell him that this house had been robbed. I asked if he didn't break in the house. He did not tell me what he broke in for, and I didn't ask him; he just told what he took. That was after I told him it would be lighter on him. The first thing we did was to ask him to own up about breaking in that house. I don't know whether he became alarmed or not. I did not know that he had broken in the house, but I knew that he was close around. I told him the best thing was to own up.

There is also a ground of alleged newly discovered evidence contained in the affidavit of Ellen Wright, "who on oath says she knows Will Wright, and that he at the time is deranged in mind and is a crazy lunatic, and that she remembers that at the time the house of Mrs. Lou Hawkins was broken open he was in one of his crazy conditions and was not responsible for his actions." The defendant's counsel made affidavit that while he had some information as to the insanity of the defendant, he did not know until after the trial that he could prove the insanity of the boy, Will, at the time

the burglary was committed, and that he had used due diligence to obtain the said proof.

E. S. V. BRIANT, for plaintiff in error.

R. B. RUSSELL, solicitor-general, by HARRISON & PEEPLES, *contra*.